IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Marvelli,                                :
                          Petitioner            :
                                                :
        v.                                      : No. 22 C.D. 2023
                                                :
U.S. Foods, Inc. (Workers'                      :
Compensation Appeal Board),                     :
                          Respondent            : Argued: November 9, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: December 21, 2023

        Joseph Marvelli (Claimant) petitions this Court for review of a December 12,
2022 order of the Workers' Compensation Appeal Board (Board), which affirmed a
decision by a workers' compensation judge (WCJ) granting a Termination Petition
filed by U.S. Foods, Inc. (Employer).  Claimant argues that the Termination Petition
could not have been adjudicated on its merits because the description of Claimant's
injury description was at issue in a then-pending appeal.  Furthermore, Claimant
maintains that the WCJ erred while addressing the Termination Petition on its merits
by improperly disregarding evidence and testimony presented by Claimant.  Upon
review, we affirm the Board.

                              **I. Background**

        At the time of the incidents leading to this case, Claimant worked for
Employer, a foodservice distributor, as a territory sales manager.  Reproduced
Record (R.R.) at 27a.  On September 14, 2017, while retrieving a stack of 3 10-

pound boxes from the back of his truck, Claimant experienced sudden pain in his neck, shoulders, and upper back. *Id.* An occupational health practice treated Claimant for neck pain three days later. *Id.* Pursuant to the Workers' Compensation Act (Act),[1] Employer accepted liability for the injury through a medical-only Notice of Compensation Payable (NCP), which described the injury as a strain or tear of the shoulder. *Id.*

## A. Claimant's Petitions and *Marvelli I*

On February 16, 2018, Claimant submitted Claim, Reinstatement, and Review Petitions, in which he alleged that the injury description should be expanded to include injuries to his neck and back, including lumbar radiculopathy. *Id.* at 9a. Employer filed a Review Petition of its own, in which it sought to amend the injury description from a shoulder injury to a strain of the cervical spine, consistent with the results of an independent medical examination (IME) of Claimant. *Id.* at 27a. In its defense, Employer submitted the deposition testimony of Dr. Robert Mauthe, the doctor who performed the IME. *Id.* at 29a. Dr. Mauthe opined that any symptoms of lumbar radiculopathy stemmed not from the work injury but from an incident on September 30, 2017, in which Claimant suddenly experienced severe lower back pain while attending a youth soccer game. *Id.* at 30a.

In a December 31, 2018 decision, WCJ Bruce Doman credited Dr. Mauthe's testimony and denied Claimant's Claim, Reinstatement, and Review Petitions. *Id.* at 32a. Regarding Claimant's lower back issues, WCJ Doman concluded that the Claimant "failed to offer expert testimony . . . to prove that the work injury include[d] a herniated lumbar disc." *Id.* at 31a. WCJ Doman also granted

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

2

Employer's Review Petition, and thus amended the description of the work injury to a "cervical spine strain with strain of the surrounding paravertebral area." *Id.* at 32a.

On appeal to the Board, Claimant argued, *inter alia*, that his proposed amendment of the injury description was erroneously rejected. *Id*. at 35a. In a January 27, 2020 order, the Board remanded on the ground that the language of WCJ Doman's order contained "an apparent contradiction," which the Board instructed him to rectify.[2] *Id.* at 37a-38a. The Board explained that it was not ruling on the merits of Claimant's appeal arguments, and therefore declined to discuss "the relevant testimony and evidence." *Id.* at 37a. On remand, WCJ Doman corrected the mistake in a July 22, 2020 decision, while adopting and reissuing all of the factual findings and legal conclusions in his December 31, 2018 decision. *Id.* at 54a.

Claimant appealed again to the Board, arguing that substantial evidence did not support the conclusion that his lower back symptoms were unrelated to the September 14, 2017 work injury. *Id.* at 70a. The Board declined to disturb the WCJ's "complete authority over questions of credibility, conflicting medical evidence and evidentiary weight," and affirmed. *Id.* at 69a (citing *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995)). Claimant appealed to this Court; we agreed with the Board, holding that WCJ Doman's credibility determinations were "well supported by the record." *Marvelli v. US Foods Inc. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 561 C.D.

---

[2] In his December 31, 2018 decision, WCJ Doman ordered Claimant's wage loss benefits to be "SUSPENDED as of Claimant's return to light duty work on April 15, 2018." R.R. at 32a. Claimant, however, never received wage loss benefits, as Employer had issued a medical-only NCP. While remanding, the Board noted that this aspect of the WCJ's decision created a contradiction: if Claimant's Claim, Reinstatement, and Review Petitions were denied, then "the WCJ should not order wage loss benefits to be suspended. On the other hand, if the WCJ wanted Claimant to receive compensation until the return of work on April 15, 2018, the WCJ should grant Claimant's Petitions, at least in part." *Id.* at 37a.

2021, filed Nov. 2, 2022), *appeal denied*, 297 A.3d 398 (Pa. 2023) (*Marvelli I*), slip op. at 7.

## B. The Termination Petition

While Claimant's appeal of WCJ Doman's December 31, 2018 decision was pending before the Board, Employer filed a Termination Petition, in which it alleged that Claimant was fully recovered from his work injury as of March 15, 2019. R.R. at 41a. The Termination Petition was assigned to WCJ Brian Puhala, who dismissed it in an April 22, 2019 decision, on the basis that the injury description was "not settled and currently on appeal to the [Board]." *Id.* at 43a. On June 9, 2020, the Board vacated WCJ Puhala's dismissal of the Termination Petition. *Id.* at 51a. The Board explained that the December 31, 2018 WCJ decision had only been remanded for clarification of the language in its order, not to reexamine the issue of the injury description. *Id.* The Board thus remanded WCJ Puhala's April 22, 2019 decision with instructions to adjudicate the Termination Petition on its merits.[3] *Id.* at 50a.

On remand, WCJ Puhala heard live testimony from Claimant at hearings on June 23, 2021, and August 23, 2021. Claimant also presented testimony from his treating physician, Dr. Jeffrey McConnell, who testified at a deposition on October 26, 2021. Employer presented testimony from Dr. Mauthe, who performed a second IME of Claimant on March 15, 2019, and who testified at a July 22, 2021 deposition. The parties also offered the prior testimony of Dr. McConnell (who testified at depositions on July 28, 2018, and October 26, 2021), Dr. Mauthe (who testified at an August 14, 2018 deposition) and Claimant (who testified at an April 10, 2018

---

[3] Claimant petitioned this Court for review of the Board's decision; we quashed, holding that Claimant was seeking an improper review of an interlocutory order. *See Marvelli v. Workers' Comp. Appeal Bd. (US Foods, Inc.)* (Pa. Cmwlth., No. 588 C.D. 2020, filed Aug. 26, 2020), *appeal denied*, 251 A.3d 775 (Pa. 2021) (*Marvelli II*), slip op. at 5.

4

hearing before a WCJ), all of which had been given in the litigation involving Claimant's Claim, Reinstatement, and Review Petitions. R.R. at 351a-52a.

**1. Employer's Evidence**

Dr. Mauthe explained that Claimant's work injury, a strain of the cervical spine and surrounding paravertebral area, consists of "trauma to the muscles in the form of a stretching[-]type injury," which results in neck pain. C.R., Item No. 41, Mauthe Dep., 7/22/2021, at 9. In contrast to radiculopathy, which causes pain over a wider area and for longer periods, the pain from a cervical spine strain is "confined to the neck and midline area," and tends to resolve within weeks. *Id.* At the time of Dr. Mauthe's first examination of Claimant, on March 22, 2018, Claimant's chief complaint was of back pain. *Id.* at 13. As for his neck, Claimant explained that it was "not that bad" at the time, and that he no longer sought treatment for it. *Id.* In Dr. Mauthe's view, a February 28, 2018 magnetic resonance image (MRI), conducted on February 28, 2018, showed "no real significant findings other than some mild degenerative changes, no herniations, and no foraminal compression." *Id.* at 12. Nonetheless, Dr. Mauthe determined that Claimant did exhibit "focal tenderness" in the neck, a symptom of persistent cervical strain resulting from the September 14, 2017 work injury. *Id.* at 37-38.

On March 15, 2019, Dr. Mauthe conducted a second IME of Claimant. *Id.* at 13. The examination revealed "normal range of motion" in Claimant's neck, shoulders, elbows, wrists, and hands. *Id.* at 15. Dr. Mauthe found no objective evidence of ongoing strains as a result of the September 14, 2017 work injury. *Id.* at 16-17. A "chronic" cervical strain, persisting for a year and a half, would have manifested itself through two symptoms: the loss of range of motion and the presence of spasm or tenderness in the muscles. *Id.* at 17. The March 15, 2019

IME revealed neither in Claimant's case. *Id.* Thus, Dr. Mauthe opined within a reasonable degree of medical certainty that Claimant was fully recovered from his work injury. *Id.* Asked to account for Claimant's persistent pain complaints, Dr. Mauthe explained that any remaining symptoms, such as numbness or tingling in his arms and hands, are not causally related to a cervical strain. *Id.* at 45-46. While acknowledging that cervical strains can "[i]n some cases" cause headaches, Dr. Mauthe dismissed the suggestion that headaches were proof that Claimant was not fully recovered from his work injury; after all, "[e]verybody has headaches," Dr. Mauthe explained, and they "can be caused by anything." *Id.* at 60-61.

### 2. Claimant's Evidence

In his testimony, Claimant maintained that he was not fully recovered from his September 14, 2017 work injury. Certified Record (C.R.), Item No. 32, Hr'g Tr., 8/23/2021, at 11. Claimant explained that he continued to experience neck pain when engaging in daily activities such as opening a refrigerator, reading a book, or driving. *Id.* at 12. In addition, Claimant testified that he felt "spasming" in his neck area, which he described as "like muscle contraction . . . in between [his] shoulder blade[] area," up to his head and outward into his arms. *Id.* at 13. Furthermore, Claimant described migraine headaches that cause "severe" pain. *Id.* at 14. Claimant testified that the headaches have been "consistent" ever since the work injury, and that they have been "getting worse and worse." *Id.* at 18. For these symptoms, Claimant continued to receive physical therapy, pain medication, and something he described as "electrical acupuncture." *Id.* at 18. Claimant testified that, while he would be eager to return to his former position with Employer, it "would be impossible" given the persistence of his headaches and other symptoms. *Id.* at 19.

Dr. McConnell recalled in deposition testimony that his most recent examination of Claimant occurred on March 26, 2019.[4]  C.R., Item No. 36, McConnell Dep., 10/26/2021, at 6.  During the examination, Dr. McConnell noted a persistent "limitation of movement in [Claimant's] lumbar spine" and some "pinprick sensation on the outside of his right foot."  *Id.* at 8.  Dr. McConnell also noted Claimant's complaints of headaches felt near the back of his head, which Dr. McConnell believed could originate in Claimant's neck.  *Id.* at 40.  Dr. McConnell's notes from the March 26, 2019 visit do not indicate that he performed an examination of Claimant's cervical spine.  *Id.* at 33-34.  However, Dr. McConnell acknowledged that, when palpating Claimant's neck and paravertebral muscles, Claimant did not complain of pain or tenderness in those areas.  *Id.* at 32-33.

Despite the absence of objective test results, Dr. McConnell diagnosed Claimant with cervical radiculopathy based entirely on his subjective pain complaints.  *Id.* at 34.  Since Dr. McConnell concluded that Claimant had reached maximum medical improvement in that area, he referred Claimant to a pain management specialist, ruling out additional surgery.  *Id.* at 34-35.

### 3. The WCJ's Remand Decision

In an April 13, 2022 decision, WCJ Puhala granted the Termination Petition and terminated Claimant's workers' compensation benefits as of March 15, 2019.  *See* C.R., Item No. 23, WCJ Decision, 4/13/2022.  WCJ Puhala credited Dr. Mauthe's testimony over Dr. McConnell's, explaining that Dr. Mauthe undertook "a

---

[4] Dr. McConnell first examined Claimant in October, 2017, when Claimant presented with pain in his lower back and right leg.  *Marvelli I*, slip op. at 2.  In a questionnaire completed for Dr. McConnell, Claimant stated that those symptoms suddenly began while he was attending a soccer game on September 30, 2017.  *Id.*  Dr. McConnell diagnosed a herniated disc in the lumbar spine, for which he performed an L5-S1 discectomy in December, 2017.  McConnell Dep., 10/26/2021, at 6.

detailed examination of Claimant's cervical spine," and offered a thorough explanation of why there were no objective indications of an ongoing cervical strain. *Id.* at 7. By contrast, Dr. McConnell focused almost entirely on Claimant's lower back symptoms, WCJ Puhala wrote. *Id.* As for Claimant's testimony, WCJ Puhala found him credible as to his treatment history, but found that the continuing pain symptoms complained of in his testimony were "clearly not associated with the [September 14, 2017] work injury." *Id.* WCJ Puhala also concluded that the witnesses' testimony from the previous litigation before WCJ Doman was "irrelevant," but noted that the summaries of the two medical experts' testimony in WCJ Doman's decision was "controlling." *Id.* at 6 n.8, 7 n.14.

Claimant appealed to the Board, which affirmed. *See* C.R., Item No. 26. This appeal followed.[5]

## II. Issues

Claimant first argues that WCJ Puhala erred by addressing Employer's Termination Petition while Claimant's appeal of the injury description, as determined by WCJ Doman, was still pending before the Board. In addition, Claimant argues that WCJ Puhala erred by dismissing deposition testimony from previous litigation as "irrelevant" after the parties agreed to present that testimony as evidence. Claimant also argues that WCJ Puhala improperly dismissed Claimant's complaints of headaches as evidence of continued disability, and erroneously determined March 15, 2019 to be the relevant date when considering whether Claimant was fully recovered from his work injury. Lastly, Claimant

---

[5] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

maintains that Dr. Mauthe's testimony was equivocal, and thus cannot support WCJ Puhala's factual findings.

## III. Discussion

### A. The *Bechtel Power* Doctrine

Claimant first argues that Employer was barred from filing its Termination Petition while his appeal from WCJ Doman's December 31, 2018 decision was on appeal to the Board. In support, Claimant cites *Bechtel Power Corporation v. Workmen's Compensation Appeal Board (Miller)*, 452 A.2d 286, 288 (Pa. Cmwlth. 1982), in which this Court recognized that when an appeal is pending, a party may not file a petition that would essentially relitigate issues identical to those to be reviewed on appeal.

In *Bechtel Power*, a referee[6] granted a claim petition and awarded disability benefits for an injury sustained in the course of his employment. *Id.* at 287. The employer appealed that decision to the Board, disputing that the work injury was the cause of the claimant's disability; the Board ultimately affirmed the referee, as, subsequently, did this Court. *Id.*; *see also Bechtel Power Corp. v. Workmen's Comp. Appeal Bd.*, 439 A.2d 1265, 1266 (Pa. Cmwlth. 1981). While the employer's appeal was pending, the employer also petitioned to terminate the claimant's benefits, alleging that the disability had ceased. *Id.* Framing the question before the Court as whether "the employer should be permitted to attack the referee's finding of disability, alleging that no disability occurred, while at the very same time petitioning for termination of benefits alleging that the disability has ceased," we held in *Bechtel Power* that it would not be "conducive to judicial or administrative economy" to permit such an attack. *Id.* at 287-88.

---

[6] WCJs were referred to at the time as referees. *See* Section 401 of the Act, amended by the Act of July 2, 1993, P.L. 190, 77 P.S. § 701.

9

While reaffirming the doctrine set forth in *Bechtel Power*, we explained in *Davis v. Workers' Compensation Appeal Board (H.M. Stauffer Sons, Inc.)*, 760 A.2d 899, 901 (Pa. Cmwlth. 2000) that the prohibition of a subsequent petition applies when both the issues *and facts* in the two petitions are identical. Alternately, when the petitions are based on different sets of facts, "i.e., different medical opinions," there is no relitigation of issues that have already been decided. *Id.* at 902. Thus, a party is not barred from filing a subsequent petition while the previous petition is on appeal. *Id.*

Claimant argues that the Termination Petition was "untimely" because his appeal, still pending at the time of the Termination Petition's filing, involved the issue of Claimant's injury description. "Because there are common issues involving [] Claimant's one body," he explains, WCJ Puhala should never have reached "the merits of the [T]ermination [P]etition before the description of the injury was ever made final." Claimant's Br. at 52. Claimant argues that it "does not matter" whether it is the same party that files both appeals, or opposing parties. *Id.* at 44. *Bechtel Power* must apply, Claimant further argues, whenever two appeals do not involve "completely separate issues." *Id.* at 43. Because Claimant continued to maintain on appeal that he sustained lumbar radiculopathy resulting from the September 14, 2017 work injury, he argues that Employer should not have been allowed to seek a "partial termination" of benefits based solely on an allegation of full recovery from the neck injury. *Id*. at 49.

Claimant's arguments are unavailing. In *Bechtel Power*, the employer filed a petition alleging that a disability had ceased while simultaneously arguing, on its own appeal, that the disability never existed. Employer's Termination Petition, by contrast, does not seek to relitigate any factual findings settled by the previous

10

litigation. As in *Davis*, and in contrast to *Bechtel Power*, the Termination Petition is based on a different set of facts from those underlying Claimant's Claim, Reinstatement, and Review Petitions. Specifically, the Termination Petition alleges a full recovery based on the March 15, 2019, IME by Dr. Mauthe, in contrast to the doctor's earlier opinion (explained in his testimony in the prior litigation) that Claimant continued to exhibit symptoms of a cervical strain in 2018.

Most notably, Employer's Termination Petition does not challenge the injury description as it was already determined by WCJ Doman. Rather, it is only Claimant who disputed that injury description in his own, ultimately unsuccessful, appeal. While it is obviously true that a WCJ's judicial determinations have a preclusive effect on future litigation, Claimant fails to cite any legal authority suggesting that an opposing party's *allegations* have a similar effect. Thus, the Board properly concluded that the WCJ was not barred from adjudicating the Termination Petition.

### B. The Relevance of the Experts' Prior Testimony

Next, Claimant argues that WCJ Puhala improperly disregarded the prior deposition testimony of Drs. Mauthe and McConnell during the litigation before WCJ Doman, after "both parties agreed [the depositions] were admissible." Claimant's Br. at 58. Such testimony is indeed relevant, according to Claimant, because WCJ Puhala "may well not have credited the testimony of Dr. Mauthe" in the present litigation had he "been able or willing to weigh the serious flaws in [Dr. Mauthe's] credibility" made clear in his prior testimony. *Id.* at 60. Claimant further argues that WCJ Puhala's ruling on the testimony's relevance raises a question of law, subject to this Court's plenary review, and that it must be overturned.

Claimant's argument is without merit. Whether Dr. Mauthe gave credible testimony in the proceedings before WCJ Doman was a question for WCJ Doman,

11

who accepted Dr. Mauthe's testimony as fact. C.R., Item No. 49, WCJ Decision, 12/31/2018, at 7. Claimant was, of course, free to dispute that determination in his appeal of WCJ Doman's decision, but he is not free to revisit the question in subsequent litigation. The sole question before WCJ Puhala was whether Claimant was fully recovered from his work injury as of March 15, 2019. As Drs. Mauthe and McConnell's prior testimony (which was given during the August 14, 2018 and July 28, 2018 depositions, respectively) did not address that question, WCJ Puhala reasonably determined that such testimony was irrelevant.[7] Contrary to Claimant's assertions, it is well settled that a WCJ's determination regarding the admission of evidence will not be overturned without a showing of an abuse of discretion. *Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bromley)*, 161 A.3d 446, 467 n.26 (Pa. Cmwlth. 2017). For the foregoing reasons, we will not disturb the WCJ's determination.

### C. Claimant's Headaches

Next, Claimant argues that the WCJ erred as a matter of law when he ruled that Claimant's complaints of continued headaches was irrelevant, since "the headaches that Claimant suffers derive directly from the recognized work injury." Claimant's Br. at 62. In support, Claimant cites his own testimony that he "gets migraine[-]type headaches deriving from the . . . clearly recognized work injuries." *Id.* at 65-66. Claimant also points to remarks made by both Drs. McConnell and Mauthe acknowledging that a cervical strain is one possible source of headaches. *See* C.R., Item No. 36, McConnell Dep., 10/26/2021, at 40; C.R., Item No. 41, Mauthe Dep., 7/22/2021, at 60.

---

[7] To reiterate, this evidence was irrelevant since Employer's burden was to prove that Claimant was fully recovered as of March 15, 2019, the date of the IME. The deposition testimony from the earlier litigation was given in 2018.

We first note that Claimant admitted in his testimony that he has been consistently suffering from the headaches in question ever since the injury itself. *See* C.R., Item No. 32, Hr'g Tr., 8/23/2021, at 18. Yet, Claimant's Claim, Reinstatement, and Review Petitions, which were filed on February 16, 2018, did not allege that headaches were among the conditions caused by his work injury. *See Marvelli II*, slip op. at 2. When an employee is aware of injuries or conditions related to the work injury at the time of proceedings on a review petition but fails to include them in his litigation, a later attempt to raise the issue is barred by the doctrine of *res judicata*. *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 956 (Pa. Cmwlth. 2008). As Claimant is now attempting to add headaches to his work injury for the first time, well after the filing of his Claim, Reinstatement, and Review Petitions, his claim is legally impermissible.

Even if Claimant were not barred from newly alleging that he suffers from headaches resulting from the work injury, he would carry the same burden of proof at this stage in the case as he did when litigating his Claim, Reinstatement, and Review Petitions. *See Liveringhouse v. Workers' Comp. Appeal Bd. (ADECCO)*, 970 A.2d 508, 512 (Pa. Cmwlth. 2009) (noting that an effort to add injuries not previously accepted by the employer carries the same burden of proof as a claim petition). Thus, to establish the causal connection between the work incident and the claimed injury would require "unequivocal medical testimony." *Jeannette Dist. Mem'l Hosp. v. Workmen's Comp. Appeal Bd. (Mesich)*, 668 A.2d 249, 251 (Pa. Cmwlth. 1995). Other than Claimant's own fact testimony, the only support for his contention involving headaches consists of remarks by both medical experts that cervical spine strains are one *possible* cause of headaches, which would not support Claimant's burden of proof. For this additional reason, we see no error in the WCJ's

13

conclusion that Claimant's complaints of headaches were "clearly not associated with the accepted . . . work injury." *See* C.R., Item No. 23, WCJ Decision, 4/13/2022, at 7.

**D. The Relevant Date of the WCJ's Remand Decision**

Claimant next argues that WCJ Puhala erroneously assumed that he was limited to determining whether Claimant was fully recovered from his work injury as of March 15, 2019, the date of Dr. Mauthe's second IME of Claimant. In fact, Claimant argues, WCJ Puhala disregarded the Board's "clear direction" in its remand order to decide "whether Claimant *is* fully recovered from" the work injury. C.R., Item No. 52, Board Op., 6/9/2020, at 4 (emphasis added). In Claimant's view, the Board's use of the present tense "is" clearly indicates that WCJ Puhala was to determine Claimant's condition as of the date of the order, rather than March 15, 2019. Claimant then argues that WCJ Puhala improperly disregarded evidence that Claimant was not fully recovered from his work injury as of March 26, 2019, the date of his most recent examination by Dr. McConnell. Specifically, Claimant alleges that his referral by Dr. McConnell to a pain management specialist establishes that Claimant continued to be disabled by the work injury after March 15, 2019.

We first note that Claimant's proposed interpretation of the Board's June 9, 2020 remand order, although novel, is unconvincing. Had the Board intended to direct the WCJ to take the unusual step of adjudicating the Termination Petition as of June 9, 2020, it was free to clarify its position in its review of the WCJ's remand decision after Claimant appealed. The Board declined to do so; instead, in affirming the WCJ, the Board rejected Claimant's argument as one of mere "semantics." C.R., Item No. 26, Board Op., 12/12/2022.

14

Employer's Termination Petition unambiguously alleged "[f]ull [r]ecovery" as of March 15, 2019.  C.R., Item No. 2.  Thus, the question before the WCJ was whether Claimant remained disabled from his work injury on that date.  If Claimant seeks to reinstate benefits based on symptoms occurring after that date, then it is his burden to show that his earning power is "once again adversely affected by his . . . disability, and that such disability is a continuation of that which arose from his . . . original claim."  *Bufford v. Workers' Comp. Appeal Bd. (North Am. Telecom)*, 2 A.3d 548, 558 (Pa. 2010).  As Claimant made no attempt to do so in this instance, we see no error in the WCJ's decision to disregard any evidence of Claimant's condition after March 15, 2019.[8]

### E. The Sufficiency of Dr. Mauthe's Testimony

Finally, Claimant argues that the WCJ committed legal error by relying on the "equivocal" medical testimony of Dr. Mauthe.  Claimant's Br. at 74.  Claimant explains that Dr. Mauthe's two examinations of Claimant were "objectively identical," yet resulted in two, conflicting conclusions by Dr. Mauthe.  *Id.* at 75.  Such a discrepancy proves, according to Claimant, that those conclusions were the products of Dr. Mauthe's own "whim."  *Id.* at 74.

Claimant's argument is meritless.  During his first examination of Claimant, on March 22, 2018, Dr. Mauthe observed "focal tenderness," a cervical strain symptom, and opined that Claimant was not fully recovered from that injury.  C.R.,

---

[8] Even if Claimant had properly argued for a reinstatement of benefits as of March 26, 2019, it should be noted that Dr. McConnell's referral to a pain management specialist is irrelevant. Dr. McConnell did not testify that he referred Claimant to a pain management specialist because of continued pain symptoms in Claimant's neck.  *See* C.R., Item No. 36, McConnell Dep., 10/26/2021, at 34.  Indeed, Dr. McConnell's decision was based on Claimant's subjective pain complaints, rather than any objective finding of persistent neck injury; as discussed previously, Dr. McConnell's records of the March 26, 2019 visit do not even indicate a specific examination of Claimant's cervical spine or surrounding area.  *Id.* at 33-34.

15

Item No. 41, Mauthe Dep., 7/22/2021, at 37-38. At the second examination, on March 15, 2019, Dr. Mauthe observed no such symptoms of the work injury, and therefore opined that Claimant was fully recovered. In other words, while Dr. Mauthe may have employed identical methods in both examinations, they were not "objectively identical," because Dr. Mauthe had a basis for concluding after the second examination that Claimant's *condition* had changed between those two dates. Thus, the WCJ did not err by crediting Dr. Mauthe's testimony.

## IV. Conclusion

Employer was not barred by the *Bechtel Power* doctrine from filing its Termination Petition, and met its burden of proof before WCJ Puhala that Claimant was fully recovered from his work injury as of March 15, 2019. Claimant provides no legitimate basis for this Court to disturb WCJ Puhala's decision granting the Termination Petition. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Marvelli,                          :
                    Petitioner           :
                                          :
        v.                                :   No. 22 C.D. 2023
                                          :
U.S. Foods, Inc. (Workers'               :
Compensation Appeal Board),              :
                    Respondent           :

# **O R D E R**

AND NOW, this 21st day of December, 2023, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated December 12, 2022, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge